**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

LION ROCK LICENSING CORPORATION,

        Plaintiff,

v.

SPECIALTY BUTTER LLC,
BUTTER EMPORIUM LLC, and
LEVI GIL SHOSHAN,

        Defendants.

Civil Action No. _____

Hon. _____

Magistrate Judge _____

---

Brian D. Wassom (P60381)
Mark Zuccaro (P85511)
WARNER NORCROSS + JUDD LLP
12900 Hall Road, Suite 200
Sterling Heights, MI 48313
(586) 303-4139
Attorneys for Plaintiff
bwassom@wnj.com
mzuccaro@wnj.com

---

**COMPLAINT**

Plaintiff Lion Rock Licensing Corp. ("Lion Rock"), through its attorneys, hereby states

its Complaint against Defendants Specialty Butter LLC, Butter Emporium LLC, and Levi "Gil"

Shoshan ("Defendants"), and allege the following:

1

## PARTIES

1.      Lion Rock Licensing Corp. ("Lion Rock") is a Michigan corporation with its principal place of business in Grand Rapids, Michigan.

2.      Upon information and belief, Defendants Specialty Butter LLC and Butter Emporium LLC are Texas limited liability companies with principal places of business at the same address in Stafford, Texas, and are owned and/or operated by Defendant Shoshan, a resident of Sugar Land, Texas.

## JURISDICTION AND VENUE

3.      Lion Rock's claims herein arise under the Lanham Act and the statutory and common law of Michigan and potentially other states as well.

4.      This Court has subject matter jurisdiction over the claims arising under the Lanham Act based on 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and § 1338(a), because the claims arise under federal law. This Court has subject matter jurisdiction over all of the claims based on 28 U.S.C. § 1332 because Lion Rock and Defendants are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs. This Court also has supplemental jurisdiction over the state law claim based on 28 U.S.C. § 1367 because the state law claim is so related to the federal claim that it forms part of the same case and controversy.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 as Plaintiff has its principal place of business in this judicial district. Defendants are very much aware of the

2

rights Lion Rock asserts in this action and have intentionally infringed them with the purpose and effect of causing injury to Lion Rock here. Further, Lion Rock believes that Defendants have sold and distributed the infringing goods throughout the United States, and that, upon information and belief, Defendant has thereby committed the complained-of acts in this district.

## LION ROCK'S TRADE DRESS RIGHTS

6.    Lion Rock owns the intellectual property rights in the butter products manufactured, distributed, and sold by its affiliate Butterball Farms, Inc., based in Grand Rapids ("Butterball Farms"). Butterball Farms is a well-known and highly regarded manufacturer, distributor, marketer, and seller of quality butter products throughout the United States. It sells its butter products to, among others, restaurants, hotels, and food service providers. Such consumers recognize Butterball Farms as the source of uniquely designed butter products for use in their own respective businesses, which inures to the benefit of Lion Rock.

7.    Butterball Farms or its predecessors have continuously manufactured, produced, marketed, distributed, and sold uniquely shaped and embossed butter and margarine products for over 45 years. Butterball Farms continues to do so under license from Lion Rock and its predecessors. Butterball Farms' licensed designs clearly distinguish Butterball Farms' butter products from butter products sold by others.

3

**The Butterball Design Mark and Spherical Butter Products**

8.      Lion Rock is the owner of United States Trademark Registration No. 5,344,177 for a Butterball Design for butter and margarine, and of any and all associated common-law trademark rights (the "Butterball Design Mark").

9.      The Butterball Design Mark trademark registration is valid, subsisting, and incontestable on the Principal Register of the U.S. Patent & Trademark Office. A copy of the trademark registration is attached as **Exhibit A**, and an excerpt therefrom is reproduced below:



Reg. No. 5,344,177
Registered Nov. 28, 2017
Int. Cl.: 29
Trademark
Principal Register

Lion Rock Licensing Corp. (MICHIGAN CORPORATION)
1435 Buchanan Avenue
Grand Rapids, MICHIGAN 49506

CLASS 29: Butter and margarine

FIRST USE 1-1-1997; IN COMMERCE 12-20-1999

The mark consists of 3-dimensional, spherical shape completely covered with protuberances.

SEC.2(F)

SER. NO. 87-186,362, FILED 09-28-2016

10.      Lion Rock is also the owner of any and all common law and other trade dress rights associated with the unique shape of the goods bearing the Butterball Design Mark.

11.      The butter products manufactured and sold in association with the iconic Butterball Design Mark have continuously been manufactured and sold in the United States

by Butterball Farms and its predecessors for nearly 27 years, since at least December 20, 1999.

12.     Butterball Farms is the exclusive licensee for the manufacturing and production of butter products associated with the federally registered and incontestable Butterball Design Mark. It uses specialized equipment used to manufacture the butter products associated with the Butterball Design Mark.

13.     Lion Rock licenses the exclusive right to distribute butter products bearing the Butterball Design Mark through food retail stores to a third party, the goodwill from which inures to Lion Rock's benefit. Lion Rock also licenses to Butterball Farms the right to market and sell butter products associated with the Butterball Design Mark through food service channels.

**14.**     The distinctive design of the butter products manufactured and sold in association with the Butterball Design Mark distinguishes Butterball Farms' butter from that sold by others and creates a very strong market and reputational presence as a source indicator of high-quality butter products.

15.     As a consequence of the long, extensive, and exclusive use of the Butterball Design Mark in association with butter and margarine, the Butterball Design Mark has become an exceedingly strong and distinctive trademark.

16.     Lion Rock also owns the following additional federal trademark registrations relevant to spherical and semi-spherical butter products:

- Incontestable U.S Principal Reg. No. 1217722 for the following design used with "butter and margarine":



- U.S Supp. Reg. No. 3278095 for the following design used with "butter and margarine":



(collectively, the "Semi-Spherical Marks").

17.    For many years and before any comparable use by Defendants, Lion Rock, through its licensees, has made continuous commercial use of the Butterball Design Mark with butter and/or margarine products, establishing for itself trade dress rights in the exact pattern of butterball shown above as well as in sphere-shaped butter products in general.

**The Rosette Design Marks**

18.     For decades, Lion Rock has also developed, marketed, and owned various other federally registered two-dimensional design marks to distinguish its butter products in the marketplace. Several of these have taken the form of a flower.

19.     In recognition of the distinctiveness of the designs, the U.S. Patent & Trademark Office has granted numerous registrations for such designs with butter and margarine products on the Principal Register of the U.S. Patent & Trademark Office, including, but not limited to:

- Incontestable U.S. Principal Trademark Reg. No. 4117067 for the following design used with "butter margarine."



- Incontestable U.S. Principal Trademark Reg. No. 1217725 for the following design used with "butter and margarine."



- Incontestable U.S. Principal Trademark Reg. No. 2392566 for the following "Rose Design" mark used with "butter and margarine."



- Incontestable U.S. Principal Trademark Reg. No. 1217723 for the following design used with "butter and margarine."



- Incontestable U.S. Principal Trademark Reg. No. 3062002 for the following design used with "butter and margarine."



- Incontestable U.S. Principal Trademark Reg. No. 943343 for the following design used with "butter and margarine."



- Incontestable U.S. Principal Trademark Reg. No. 1202194 for the following design used with "butter":



- U.S. Supp. Trademark Reg. No. 1067931 for the following design used with "butter, margarine."



- U.S. Supp. Trademark Reg. No. 1044519 for the following design used with "butter, margarine."



(Collectively, the "Rosette Marks"). Copies of the trademark registrations associated with these distinctive designs are attached here as *Exhibit B.*

9

20.    For many years and before any comparable use by Defendants, Lion Rock, through its licensees and predecessors, has made continuous commercial use of the Rosette Marks with butter and/or margarine products, establishing for itself trade dress rights in each of the above-displayed designs and in rosette-shaped butter products in general.

21.    In addition to the Butterball Design Mark, the Semi-Spherical Marks, and the Rosette Marks, Lion Rock also owns additional federal trade dress registrations in two and three-dimensional design marks for butter and/or margarine.

22.    Herein, Lion Rock will refer to its registered and common law trademark and trade dress rights in spherical and rosette-shaped butter and margarine products collectively as its "Trade Dress."

## DEFENDANTS' BRAZEN AND INTENTIONAL INFRINGEMENTS OF LION ROCK'S TRADE DRESS RIGHTS

23.    Decades ago, Defendant Shoshan owned a company called Signature Butter Farms, Inc. ("Signature"), which distributed specialty butter products. Even at that time, Shoshan was well aware of—and intent on infringing—the valuable trade dress rights of Lion Rock's predecessors.

24.    In 2001, Butterball Farms and its licensor sued Signature in the U.S. District Court for the Southern District of Florida for, among other things, trademark and trade dress infringement for manufacturing, marketing, and selling of butter products bearing embossed rose designs that were confusingly similar to butter products bearing Butterball Farm's

federally registered trademark and common-law trade dress in a subset of the Rosette Marks (the "Signature Litigation," Case No. 01-08650).

25.    In 2002, a jury verdict, final judgment, and permanent injunction were entered against Signature for its infringement of US Trademark Reg. 2392566 (*i.e.*, ) and of "Butterball's unregistered trade dress in rose designs." Copies of the Special Verdict, Final Judgment, and Permanent Injunction from the Signature Litigation are attached as ***Exhibit C***.

26.    On information and belief, at some point after this verdict was issued, Shoshan shut down Signature and opened Defendants Specialty Butter LLC and Butter Emporium LLC.

27.    In 2019, Lion Rock learned that Shoshan and Butter Emporium LLC were manufacturing, distributing, marketing, selling, and otherwise promoting butter products that bore the same distinctive shape as butter products bearing the Butterball Design Mark, as shown below:



28.    As a result, Lion Rock and Butterball Farms brought Case No. 19-11590 against Shoshan and Butter Emporium LLC in the U.S. District Court for the Eastern District

of Michigan, alleging infringement of the Butterball Design Mark and related claims (the "2019 Litigation").

29.    The COVID-19 pandemic, however, wreaked unexpected havoc on the food service industry, and impaired all parties' ability to prosecute the 2019 Litigation. On June 23, 2020, the Court entered a Stipulated Order of Voluntary Dismissal, without prejudice.

30.    In correspondence between counsel leading up to the dismissal, the defendants had, by that point, stopped selling the products that duplicated the Butterball Design Mark. Defendants had instead indicated an intention to redesign its butterball product to contain a more ridged texture, although to Lion Rock's knowledge, any sales were still hampered by the pandemic. The undersigned counsel made clear in writing, however, that Lion Rock did not approve of the proposed ridged design, considered it an infringement of Lion Rock's trade dress rights, and that Lion Rock reserved its right to take future enforcement action against the design.

31.    Thereafter, Lion Rock was not aware of any meaningful advertising or sale by Defendants of infringing products until recently.

32.    Lion Rock has come to learn that Shoshan and his various entities are once again free-riding on Lion Rock's valuable goodwill by selling infringing knockoffs of its trade dress-protected butter products.

33.    Specifically, Defendants are actively offering for sale (and, on information and belief, selling) spherical butter products that infringe the Butterball Design Mark and the Semi-Spherical Marks, as shown below:







34.    Further, Defendants are also actively offering for sale (and, on information and belief, selling) shaped butter products that infringe one or more of the Rosette Designs, as shown below:







Lion Rock will refer to all of these products, and any others that infringe Lion Rock's Trade Dress, as the "Accused Goods."

35. As if these actions were not brazen enough, Defendant Specialty Butter, LLC is also using a nearly identical rendering of one of Lion Rock's registered Rosette Marks as its company logo:



### HARM TO PLAINTIFF

36. Defendants' use of designs and shape in connection with the marketing, distribution, promotion, and sale of the Accused Goods is likely to cause confusion with Lion Rock's registered Butterball Design Mark and Trade Dress that has long been used with its own butter products. Defendants' use is also likely to cause confusion and mislead and deceive consumers as to the source, sponsorship or affiliation of Defendants' Accused Goods.

37.    If Defendants are permitted to continue to manufacture, market, distribute, promote and sell the Accused Goods by infringing Lion Rock's distinctive Trade Dress, Lion Rock will continue to suffer irreparable harm for which there is no adequate remedy at law.

38.    In all material respects, Defendants have acted and are liable both individually and in concert with each other.

39.    Defendant Shoshan is the controlling and moving force behind the actions of the other Defendants and has personally made the decisions that have caused them to infringe Lion Rock's rights. He is liable for their actions and for his own individually.

**COUNT I**
**TRADEMARK INFRINGEMENT – BUTTERBALL DESIGN MARK**
**LANHAM ACT – 15 U.S.C. § 1114(1)**

40.    Lion Rock incorporates all prior paragraphs as if they have been stated here.

41.    Lion Rock owns trademark and trade dress rights in the Butterball Design Mark.

42.    Defendants' unauthorized use in commerce of a spherical butter design which is confusingly similar to the registered Butterball Design Mark, and on goods that are identical or substantially similar and highly related to the goods of Lion Rock, is likely to cause confusion or cause mistake, and/or deceive users as to the origin, sponsorship, or approval by Lion Rock of Defendants' Accused Goods.

43.    Defendants' unauthorized use in commerce of a spherical butter design which is confusingly similar to the registered and incontestable Butterball Design Mark, is likely to cause the relevant public to mistakenly believe that Defendants' goods originate from, are

19

sponsored by, or are in some way associated or affiliated with Lion Rock, and is likely to cause Lion Rock's Butterball Design Mark to lose its significance as an indicator of origin. Defendants' actions violate 15 U.S.C. § 1114(1).

44.    Defendants' unauthorized use in commerce of a spherical butter design, which is confusingly similar to the registered Butterball Design Mark with goods that are identical or substantially similar and highly related to Lion Rock's goods, is being conducted with full knowledge by Defendants of Lion Rock's prior rights. Thus, Defendants have willfully infringed and is infringing such rights in violation of the Lanham Act.

45.    The goods proffered by Defendants are intended to be and are in fact targeted toward a substantial segment of the public (including but not limited to food service providers) that has long been familiar with Lion Rock's goods bearing its unique Butterball Design Mark. Defendants' goods target the same purchasers as Lion Rock's goods.

46.    Lion Rock has no control over the nature of the goods marketed and provided by Defendants.

47.    As a result of Defendants' actions, Lion Rock has suffered and will continue to suffer irreparable harm and injury to its business reputation and goodwill for which there is no adequate remedy at law.

48.    This is an exceptional case pursuant to 15 U.S.C. § 1117.

49.    By reason of the above, Lion Rock is entitled to injunctive relief against Defendants that permanently restrains Defendants from further acts of trademark

infringement and to any damages that have been caused by Defendant's aforementioned acts, including but not limited to, treble damages, costs, and attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT II
## TRADEMARK INFRINGEMENT – THE SEMI-SPHERICAL MARKS
## LANHAM ACT – 15 U.S.C. § 1114(1)

50.    Lion Rock incorporates all prior paragraphs as if they have been stated here.

51.    Lion Rock owns trademark and trade dress rights in the Semi-Spherical Marks.

52.    Defendants' unauthorized use in commerce of a spherical butter design which is confusingly similar to the registered Semi-Spherical Marks, and on goods that are identical or substantially similar and highly related to the goods of Lion Rock, is likely to cause confusion or cause mistake, and/or deceive users as to the origin, sponsorship, or approval by Lion Rock of Defendants' goods.

53.    Defendants' unauthorized use in commerce of a spherical butter design which is confusingly similar to the registered Semi-Spherical Marks, is likely to cause the relevant public to mistakenly believe that Defendants' goods originate from, are sponsored by, or are in some way associated or affiliated with Lion Rock, and is likely to cause Lion Rock's Semi-Spherical Marks to lose significance as an indicator of origin. Defendants' actions violate 15 U.S.C. § 1114(1).

54.    Defendants' unauthorized use in commerce of a spherical butter design, which is confusingly similar to the registered Semi-Spherical Marks with goods that are identical or

21

substantially similar and highly related to Lion Rock's goods, is being conducted with full knowledge by Defendants of Lion Rock's prior rights. Thus, Defendants have willfully infringed and is infringing such rights in violation of the Lanham Act.

55.    The goods proffered by Defendants are intended to be and are in fact targeted toward a substantial segment of the public (including but not limited to food service providers) that has long been familiar with Lion Rock's goods bearing its unique Semi-Spherical Marks. Defendants' goods target the same purchasers as Lion Rock's goods.

56.    Lion Rock has no control over the nature of the goods marketed and provided by Defendants.

57.    As a result of Defendants' actions, Lion Rock has suffered and will continue to suffer irreparable harm and injury to its business reputation and goodwill for which there is no adequate remedy at law.

58.    This is an exceptional case pursuant to 15 U.S.C. § 1117.

59.    By reason of the above, Lion Rock is entitled to injunctive relief against Defendants that permanently restrains Defendants from further acts of trademark infringement and to any damages that have been caused by Defendant's aforementioned acts, including but not limited to, treble damages, costs, and attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT III
### TRADEMARK INFRINGEMENT – THE ROSETTE MARKS
### LANHAM ACT – 15 U.S.C. § 1114(1)

60.    Lion Rock incorporates all prior paragraphs as if they have been stated here.

61.    Lion Rock owns trademark and trade dress rights in the Rosette Marks.

62.    Defendants' unauthorized use in commerce of a spherical butter design which is confusingly similar to one or more of the registered Rosette Marks, and on goods that are identical or substantially similar and highly related to the goods of Lion Rock, is likely to cause confusion or cause mistake, and/or deceive users as to the origin, sponsorship, or approval by Lion Rock of Defendants' goods.

63.    Defendants' unauthorized use in commerce of a rosette-shaped butter design which is confusingly similar to one or more of the registered Rosette Marks, is likely to cause the relevant public to mistakenly believe that Defendants' goods originate from, are sponsored by, or are in some way associated or affiliated with Lion Rock, and is likely to cause Lion Rock's Rosette Marks to lose significance as an indicator of origin. Defendants' actions violate 15 U.S.C. § 1114(1).

64.    Defendants' unauthorized use in commerce of a flower-shaped butter design, which is confusingly similar to the registered Rosette Marks with goods that are identical or substantially similar and highly related to Lion Rock's goods, is being conducted with full knowledge by Defendants of Lion Rock's prior rights. Thus, Defendants have willfully infringed and is infringing such rights in violation of the Lanham Act.

65. The goods proffered by Defendant are intended to be and are in fact targeted toward a substantial segment of the public (including but not limited to food service providers) that has long been familiar with Lion Rock's goods bearing its unique Rosette Marks. Defendants' goods target the same purchasers as Lion Rock's goods.

66. Lion Rock has no control over the nature of the goods marketed and provided by Defendant.

67. As a result of Defendants' actions, Lion Rock has suffered and will continue to suffer irreparable harm and injury to its business reputation and goodwill for which there is no adequate remedy at law.

68. This is an exceptional case pursuant to 15 U.S.C. § 1117.

69. By reason of the above, Lion Rock is entitled to injunctive relief against Defendants that permanently restrains Defendants from further acts of trademark infringement and to any damages that have been caused by Defendant's aforementioned acts, including but not limited to, treble damages, costs, and attorneys' fees pursuant to 15 U.S.C. § 1117.

**COUNT IV**
**TRADEMARK COUNTERFEITING**
**LANHAM ACT – 15 U.S.C. § 1114**

70. Lion Rock incorporates all prior paragraphs as if they have been stated here.

24

71. Defendants, without authorization from Lion Rock, has used and is continuing to use spurious designations that are identical to, or substantially indistinguishable from, one or more of Lion Rock's registered design marks included in its Trade Dress.

72. The foregoing acts of Defendants are intended to cause, have caused, and are likely to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that Defendants' Accused Goods are genuine or authorized products of Lion Rock.

73. Upon information and belief, Defendants have acted with knowledge of Lion Rock's ownership of the Trade Dress and with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill inherent in the Trade Dress.

74. Defendants' acts constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

75. Upon information and belief, Defendants have made and will continue to make substantial profits and/or gains to which it is not entitled in law or equity.

76. Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

77. Defendants' acts have damaged and will continue to damage Lion Rock, and Lion Rock has no adequate remedy at law.

**COUNT V**
**FEDERAL UNFAIR COMPETITION**
**LANHAM ACT – 15 U.S.C. § 1125(A)**

78. Lion Rock incorporates all prior paragraphs as if they have been stated here.

79.    Defendants' unauthorized use in commerce of a designs to advertise, market, and sell goods that are identical or substantially similar and highly related to Lion Rock's Trade Dress constitutes unfair competition and false advertising in violation of 15 U.S.C. § 1125(a).

80.    Consumers are likely to be misled and deceived by Defendants' representations regarding its goods.

81.    Defendants knew or should have known that the Accused Goods were likely to mislead.

82.    As an actual and proximate result of Defendants' willful and intentional actions, Lion Rock has suffered damages in an amount to be determined at trial, and unless Defendants are enjoined, Lion Rock will continue to suffer irreparable harm and damage to its business, reputation, and goodwill.

83.    This is an exceptional case pursuant to 15 U.S.C. § 1117.

84.    By reason of the above, entitled to injunctive relief against Defendants that permanently restrains Defendants from further acts of trademark infringement and to any damages that have been caused by Defendants' aforementioned acts, including but not limited to, treble damages, costs, and attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT VI
## INFRINGEMENT OF COMMON LAW TRADE DRESS –
## SPHERICAL DESIGN
## LANHAM ACT – 15 U.S.C. § 1125(A)(3)

85.    Lion Rock incorporates all prior paragraphs as if they have been stated here.

86.    Lion Rock's 3-D spherical shaped products have been widely distributed, marketed and sold in the United States for over 25 years.

87.    The Lion Rock 3-D spherical shaped products have an appearance that is either inherently distinctive or has acquired secondary meaning in the relevant marketplace.

88.    Defendants are currently advertising, distributing and selling 3-D spherical shaped products that are substantially similar in appearance to Lion Rock's distinctive Trade Dress and which are confusingly similar to Lion Rock's product.

89.    Defendants' marketing and sale of products that incorporate Lion Rock's protectable Trade Dress in spherical butter designs is likely to cause confusion, to cause mistake, or to deceive as to an affiliation, connection, or association on the origin, sponsorship or approval of Lion Rock's product, or to misrepresent the nature, characteristics, or qualities of Lion Rock's product.

90.    Defendants' advertising, marketing, and sale of similar 3-D spherical shaped products, as described above, violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

91.    Upon information and belief, Defendants' trade dress infringement has been willful.

92.    As a direct and proximate cause of Defendants' actions, Lion Rock has been damaged and will continue to suffer actual damages, and have suffered and will continue to suffer irreparable harm and injury, to their business reputation and goodwill for which there is no adequate remedy at law.

## COUNT VII
## UNFAIR COMPETITION
## VIOLATION OF MICHIGAN COMMON LAW

93.    Lion Rock incorporates all prior paragraphs as if they have been stated here.

94.    By virtue of Defendants' acts hereinabove pleaded, Defendants have engaged in unfair competition in violation of Michigan common law. Defendants' use of the Trade Dress is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Lion Rock and as to the origin, sponsorship, endorsement, or approval by Lion Rock of Defendants' products and its other commercial activity. Confusion is likely to occur if Defendants' sales and distribution of use of the Trade Dress does not stop.

95.    Defendants' unauthorized use of the Trade Dress in connection with goods and services that are identical or substantially similar and highly related to Lion Rock's goods jeopardizes the entire goodwill symbolized by the Trade Dress, causing immediate, serious, and irreparable injury to Lion Rock, for which Lion Rock does not have an adequate remedy at law.

96.     If the Court should determine that the laws of Texas or another state apply to Defendants' actions instead of Michigan's, then Lion Rock asserts in the alternative a violation of that jurisdiction's most analogous law.

## COUNT VIII
## VIOLATION OF MICHIGAN CONSUMER PROTECTION ACT
### M.C.L. § 445.903

97.     Lion Rock incorporates all prior paragraphs as if they have been stated here.

98.     By virtue of Defendants' acts hereinabove pleaded, Defendant is in violation of Michigan Consumer Protection Act.

99.     Defendants' use of Lion Rock's Trade Dress is unfair, unconscionable, or deceptive and likely to cause confusion, or to cause mistake, or to deceive as to the source, sponsorship, approval, or certification of Defendants' goods.

100.     Defendants' unauthorized use of the Trade Dress in connection with goods that are identical or substantially similar and highly related to Lion Rock's goods jeopardizes the entire goodwill symbolized by the Trade Dress, causing immediate, serious, and irreparable injury to Lion Rock, for which Lion Rock does not have an adequate remedy at law.

101.     If the Court should determine that the laws of Texas or another state apply to Defendants' actions instead of Michigan's, then Lion Rock asserts in the alternative a violation of that jurisdiction's most analogous law.

**PRAYER FOR RELIEF**

WHEREFORE, Lion Rock respectfully prays that this Court enter an order and judgment in its favor and against Defendants as follows:

A.      That Lion Rock's Trade Dress rights as pled herein are valid and protectable.

B.      That Defendants' Accused Goods infringe Lion Rock's Trade Dress and violate other relevant federal and state laws and regulations as pled herein.

C.      That Defendants, their agents, servants, employees, attorneys, and all persons in active concert or participation with them, be permanently enjoined and restrained from:

1.      Using the Trade Dress or any variation thereof;

2.      Using any mark that is confusingly similar to or a colorable imitation of the Butterball Design Mark, including but not limited to any spherical butter design; and

3.      Otherwise infringing Lion Rock's Trade Dress.

D.      That Defendants actions described herein were willful.

E.      That Defendants be required to pay to Lion Rock such damages, statutory or otherwise, together with pre-judgment interest thereon, as Lion Rock has sustained as a consequence of Defendants' wrongful acts, and to account for and return to Lion Rock any monies, profits, and advantages wrongfully gained by Defendant.

F.      That Defendants pay treble damages to Lion Rock, pursuant to 15 U.S.C. § 1117.

G. That Defendants pay to Lion Rock its reasonable attorney's fees, expenses and costs incurred in this action, pursuant to 15 U.S.C. § 1117.

H. That Defendants deliver up for impoundment, and for destruction upon entry of judgment, all products, advertising, marketing materials, writings, signage, artwork, and other material, including media, which infringe Lion Rock's rights, falsely designate its source or origin or otherwise facilitate Defendants' infringement of the Trade Dress.

I. That Defendants be directed to file with this Court and serve on Lion Rock within thirty (30) days after the service of an injunction, a written report under oath setting forth in detail the manner and form in which Defendants have complied with this injunction.

J. That Lion Rock be granted such further relief as the Court may deem appropriate.

Respectfully submitted,

Dated: June 1, 2026

By: /s/ Brian D. Wassom
Brian D. Wassom (P60381)
WARNER NORCROSS + JUDD LLP
12900 Hall Road, Suite 200
Sterling Heights, MI 48313
(586) 303-4139
Attorneys for Plaintiff
bwassom@wnj.com

31